## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SARINDA L. RIDDLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-83-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Sarinda L. Riddle requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also* *Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 15, 1969, and was thirty-nine years old at the time of the administrative hearing. (Tr. 25, 118). She attended college several years, and has worked as a dispatcher, retail store manager, and shelter worker/monitor. (Tr. 25, 43, 169). The claimant alleges inability to work since September 19, 2003, due to end stage renal disease, arthritis, gastroparesis, erosive esophagitis, high blood pressure, depression, Type I diabetes, and anemia. (Tr. 161).

## Procedural History

On October 24, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 8, 2009. (Tr. -1321). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work, *see* 20 C.F.R. § 404.1567(a), 416.967(a), except that she could only occasionally stoop,

crouch, crawl, kneel, balance, or climb stairs and ladders, and that she was unable to reach overhead bilaterally. (Tr. 17). The ALJ concluded that the claimant was not disabled because she could return to her past work as a dispatcher. (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence, particularly that of treating physician Dr. Michael Stafford, and (ii) by finding that she could return to her past relevant work as a dispatcher. The Court finds that the ALJ *did* fail to properly evaluate the evidence from Dr. Stafford, and the decision of the Commissioner is therefore reversed.

The ALJ found that the claimant had the severe impairments of diabetes, arthritis, and renal disease (in remission). (Tr. 15). The medical evidence reveals that the claimant was hospitalized with acute renal failure on September 28, 2003; acute renal failure on October 1, 2003; chronic renal failure on January 12, 2004, chronic renal insufficiency on March 19, 2004; chronic renal insufficiency made worse by dehydration on June 6, 2004; and chronic renal failure on August 10, 2004. (Tr. 221, 227, 250, 267, 300). On April 6, 2006, Dr. Kumar noted that the claimant was clinically stable with fatigue. (Tr. 466). Dr. Kumar also noted several times that the claimant had chronic fatigue. (Tr. 386, 438, 441, 444, 451). Because of her joint pain, Dr. Kumar referred the claimant to Dr. Ira Targoff, a rheumatologist. Dr. Targoff also noted that the claimant generally slept fifteen hours a day for unknown reasons, and that she was frequently tired and fatigued. (Tr. 460, 464). The claimant was also treated by Dr. Michael Stafford. Medical records reflect that the claimant saw Dr. Stafford four times in 2007, and he

treated her blood pressure and diabetes, and also directed her to follow up with her specialists for her other impairments. (Tr. 376-386). Additionally, treatment notes from Dr. Kumar were sent to Dr. Stafford as her treating physician. (Tr. 396-388). The claimant had arthroscopic surgery on her shoulders after she failed all conservative measures. (Tr. 602-603, 661).

On January 24, 2005, Dr. Kumar completed a Health Care Provider Statement in support of the claimant's applications for TANF assistance, indicating that the claimant was unable to work or participate in on-the-job training, nor was she capable of attending classes, counseling, or training. (Tr. 839). He attributed this statement to the claimant's renal failure, diabetes, and arthritis, then noted that her diagnoses were diabetes mellitus, hypertension, and kidney failure. (Tr. 839, 841). He completed additional statements on November 7, 2005 and July 6, 2006, indicating that in 2005 she was in kidney failure and in 2006 she had chronic kidney disease. (Tr. 843, 845). A state reviewing physician found in January 2008 that the claimant could do sedentary work, except that she could only occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl, and that she was limited in reaching all directions. (Tr. 583-589). The reviewer noted the claimant's complaints of fatigue, but stated that it was "not quantitated." (Tr. 584). On June 12, 2009, Dr. Stafford completed a physical Medical Source Statement ("MSS"), finding that the claimant could not even perform sedentary work from June 13, 2007 to June 12, 2009, due to her joint problems and renal failure. (Tr. 635-636). Specifically, he stated that she could lift less than 10 pounds, stand/walk five to ten minutes in an eight-hour workday, and sit four hours on a good day but less

than one hour on a bad day, and that she was required to lie down during the normal workday.  (Tr. 635-636).  Dr. Stafford also noted the numerous doctors who were also treating the claimant for her various illnesses.  (Tr. 636).

At the administrative hearing, the claimant testified that she lives with her mother and daughter and that her mother helps take care of her daughter.  (Tr. 29).  As to her physical impairments, she testified that Dr. Stafford had been treating her for two years as her primary care physician, and that Dr. Stafford had told her that she had end stage kidney disease and joint problems.  (Tr. 31-33).  As to her shoulders, she testified that she had undergone arthroscopic surgery on both shoulders in the past year and that she also had hip and knee problems, that the pain "ebbs and flows," and when it flares up she has to stay in bed for up to two and a half weeks.  (Tr. 36).  She stated that she was diagnosed with end stage renal failure on 2003 and that it was currently stable, but that she had been through counseling courses about dialysis.  (Tr. 37-38).  She explained that she was diagnosed with Type I diabetes twenty-six years earlier, and that she is insulin dependent and wears an insulin pump.  (Tr. 38-39).  She said that her renal failure was "not terrifically bad," but that both the diabetes and renal failure caused fatigue so that she gets "terribly, terribly tired all the time," and sleeps fourteen to sixteen hours in a day.  (Tr. 40).  She stated that her shoulders had a good range of motion following her surgeries and that she has flare-ups once or twice a month.  (Tr. 41).  The ALJ asked the claimant whether her impairments were stabilized or deteriorating, and the claimant replied that her diabetes was stabilized, her renal failure was "stabilized right now," and her "rheumatory type of arthritis" was not stable.  (Tr. 41).

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave

to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

In his written decision, the ALJ summarized the claimant's testimony and the medical evidence. As to Dr. Stafford, the ALJ found that he saw the claimant on only four visits from June 2007 to October 2007, and contrasted his diagnosis of end stage renal disease with kidney specialist Dr. Satish Kumar, who stated that she had chronic renal failure approaching end stage renal disease in January 2004, then found her clinically stable after that. (Tr. 18). The ALJ also found that Dr. Kumar had not provided the claimant with "specific limitations in exertion," but had recommended an exercise regimen in October 2003. (Tr. 19). The ALJ discussed the claimant's reports of flare-ups and admitted that she had some joint abnormalities and some decreased range of motion, but found that her treatment had been "mostly conservative" in contrast to the claimant's description of her flare ups. (Tr. 19). The ALJ recited Dr. Stafford's findings, but stated that Dr. Stafford only saw the claimant four times and that his assessment "appears to rest on an assessment of impairments outside the doctor's area of expertise," then used those reasons to assign the opinion "very little weight," and further noting that Dr. Stafford's treatment appeared to be two years prior to his MSS statement. (Tr. 19). The ALJ then adopted the opinions of the state agency physicians who found that the claimant could do limited sedentary work. (Tr. 20).

The undersigned Magistrate finds that the ALJ improperly evaluated the medical evidence for a number of reasons. First, the ALJ impermissibly substituted his own determination for that of the claimant's physicians when he found that the claimant had

the severe impairment of renal disease, but that it was in remission. *Miller v. Chater*, 99

F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of

claimant's doctor."), *citing Sisco v. United States Department of Health & Human

Services*, 10 F.3d 739, 743 (10th Cir. 1993) *and Kemp v. Bowen*, 816 F. 2d 1469, 1475

(10th Cir. 1987). *See also Allen v. Schweiker*, 567 F. Supp. 1204, 1209 (D. Del. 1983)

("First, conclusions 1, 2 and 3 are all improper because they represent the ALJ's personal

medical judgments concerning the claimant's condition. . . . It is the duty of the ALJ to

choose between properly submitted medical evidence, but it is not his function to assume

the role of a doctor. . . . A layman such as the ALJ is not free to draw his own

conclusions as to the meaning of these tests."), *citing Gober v. Matthews*, 574 F.2d 772,

777 (3d Cir. 1978). The medical evidence reflects that the claimant was hospitalized

numerous times for her chronic renal insufficiency, and it was later termed "stable," not

nonexistent. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989) ("[E]vidence is not

substantial . . . if it really constitutes mere conclusion."), *citing Fulton v. Heckler*, 760

F.2d 1052, 1055 (10th Cir. 1985) *and Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.

1985). *See also Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) ("The

absence of evidence is not evidence. . . . The ALJ, however, finding no evidence upon

which to make a finding as to RFC, should have exercised his discretionary power to

order a consultative examination of [claimant] to determine her capabilities."); *Maes v.

Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("[W]hen the ALJ considers an issue that is

apparent from the record, he has a duty of inquiry and factual development with respect

to that issue.")

Second, the ALJ is required to determine the proper weight to give a medical opinion by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted]. *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). In his written opinion, the ALJ found fault with Dr. Stafford's assessment of the claimant because the medical evidence only contained record of four visits in 2007. (Tr. 19). This is contrasted with the claimant's own testimony that Dr. Stafford had been treating her for two years, and medical records during that period indicating that Dr. Staff had referred the claimant to other physicians. In light of the ambiguity as to the length of Dr. Stafford's treating relationship with the claimant, the ALJ should have re-contacted Dr. Stafford for an explanation (including more recent medical records, if any) and the basis for imposing physical limitations on the claimant's ability to perform work activities. *See* 20 C.F.R. §§ 404.1520b(c)(1), (2)

("We may recontact your treating physician, psychologist, or other medical source. . . . We may request additional existing records.").

Last, Dr. Kumar's Health Care Provider Statements qualify as new evidence that the ALJ should consider. The Appeals Council was required to consider this evidence if it was: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). Although the parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new evidence, the Appeals Council *did* consider it (Tr. 6), and the Court therefore has no difficulty concluding that it does qualify. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record . . . assess[ed] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."). The report was not duplicative or cumulative, and reasonably calls into question the disposition of the case, because Dr. Kumar specifically opined to the Oklahoma Department of Human Services on at least three occasions that the claimant could not work or participate in job training, even while sitting down. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) [unpublished table opinion]. In contrast, the ALJ's opinion indicates he mistakenly believed that Dr. Kumar had not provided any specific limitations on the

claimant's exertion level. (Tr. 19). Additionally, the evidence pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Thus, the ALJ had no opportunity to perform a proper analysis of the newly-submitted relevant evidence in accordance with the authorities cited above.

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner should be reversed and the case remanded for further analysis of the opinions of *all* the claimant's treating physicians. If such analysis results in changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma